

*In the*

*Missouri Court of Appeals*

*Western District*

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD75335** |
| | ) | |
| **v.** | ) | **OPINION FILED: February 18, 2014** |
| | ) | |
| **ANTONIO WEST,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Randall R. Jackson, Judge

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

**Introduction**

Antonio L. West ("West") was convicted by a Buchanan County jury of three counts of delivery of a controlled substance, a class B felony, in violation of section 195.211.[1] He was sentenced to serve ten years in prison on each count, with Counts I and II to run consecutively and Count III to run concurrently. West appeals, alleging that the trial court erred in denying his motion for a new trial because the jury, in finding him guilty, improperly considered the fact that West did not testify in his own defense. West

---

[1] All statutory references are to RSMo 2000 cumulative as currently supplemented unless otherwise indicated.

argues that his constitutional rights under the Fifth, Sixth and Fourteenth Amendments were violated because the jury considered a negative inference from West's exercise of his right against self-incrimination. West further contends that the jury's improper consideration of his failure to testify deprived him of a fair and impartial jury. We disagree and affirm.

## Factual Background[2]

On March 11, 2009, two investigators with the Buchanan County Drug Strike Force, Tony Williams ("Williams") and Tami Parson ("Parson"), were working with a confidential informant ("CI") regarding a controlled substance purchase. Prior to the buy, CI and his vehicle were thoroughly searched, a recording device was placed on CI and he was given cash to purchase drugs. West was known to CI as "Tone." CI gave West money in exchange for what was later determined to be crack cocaine.

The next day, the same scenario took place. CI gave West money in exchange for more crack cocaine. One week later, CI met with police and identified "Tone" as West in a photograph that the police showed him. Two weeks later, the two again met for a third controlled drug buy.

At trial, CI confirmed that it was West's voice on the recordings of all three controlled drug buys and also verified the accuracy of transcripts of the recordings prepared by the State. The audio recordings of the drug buys were played for the jury.

---

[2] We view the evidence in the light most favorable to the jury's verdict and disregard all evidence that is contrary to the verdict. *State v. Davis*, 318 S.W.3d 618, 621 (Mo. banc 2010).

Two criminologists testified that the substances purchased contained cocaine base. West did not testify but did call several witnesses.

At the jury's request, during deliberations, the court played the audio recordings of each of the drug buys for them again. The jury found West guilty of three counts of delivery of a controlled substance and recommended sentences of imprisonment of ten years on each count.

West filed a motion for a new trial alleging that the jury improperly considered the fact that he did not testify during their deliberations. West attempted to call one of the jurors to testify at the motion hearing in support of this contention. While the State had no objection, the trial court refused to hear the testimony unless it fell within one of the currently recognized exceptions to the sanctity of the jury deliberation room. West requested to make an offer of proof. The trial court only allowed counsel to make an offer of proof as to what he anticipated the testimony of the juror would be, but did not allow the juror to be called as a witness. Counsel indicated that the juror would testify that the jury noted that they were unable to compare West's voice with the audiotape of the alleged drug transactions. Further, that the juror would testify that he would have liked to have heard West testify, and "the jurors considered the fact that [he] did not testify and discussed it, including that if [he] had sounded different than the tapes, they would have considered that in reaching their verdicts."

On appeal, West asserts one point of error in which he claims that the trial court erred in denying his motion for a new trial as well as in denying his proffer of testimonial evidence from the juror.

## Standard of Review

This court will not disturb a trial court's ruling on a motion for a new trial based on juror misconduct unless the trial court abused its discretion. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 86-87 (Mo. banc 2010) (citing *Alcorn v. Union Pac. R.R. Co.,* 50 S.W.3d 226, 246 (Mo. banc 2001)). A trial court abuses its discretion if its ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

## Analysis

In his sole point on appeal, West argues that the trial court erred when it denied his motion for a new trial and denied his proffer of the juror's testimony in support of his motion. West contends that his constitutional right to a fair and impartial jury was violated because the jury improperly considered the fact that he did not testify at trial when it found him guilty. We disagree.

## I. General Rule Concerning Impeachment of Verdict Due to Juror Misconduct

The "well-founded and long-established rule" governing impeachment of a verdict provides:

> [T]he affidavit or testimony of a juror is inadmissible and is not to be received in evidence for the purpose of impeaching the verdict of a jury. Alternate jurors are likewise precluded from testifying in a manner that impeaches a verdict.

*Storey v. State*, 175 S.W.3d 116, 130 (Mo. banc 2005) (citing *Wingate by Carlisle v. Lester E. Cox Med. Ctr.,* 853 S.W.2d 912, 916 (Mo. banc 1993)).

"The rule is perfectly settled, that jurors speak through their verdict, and they cannot be allowed to violate the secrets of the jury room, and tell of any partiality or misconduct that transpired there, nor speak of the motives which induced or operated to produce the verdict." *Woodworth v. State,* 408 S.W.3d 143, 149 n.5 (Mo. App. W.D. 2010) (internal citations and quotation marks omitted). "Missouri law has long held that a juror may not impeach a unanimous, unambiguous verdict after it is rendered." *State v. Carter*, 955 S.W.2d 548, 557 (Mo. banc 1997) (internal citation omitted). A juror's testimony about jury misconduct allegedly affecting deliberations may not be used to impeach the jury's verdict. *State v. Herndon*, 224 S.W.3d 97, 103 (Mo. App. W.D. 2007) (internal citation and quotation marks omitted). Further, a motion court is not required to hear testimony from jurors to rule on a motion for new trial that is brought on allegations of juror misconduct. *State v. Chambers*, 891 S.W.2d 93, 101 (Mo. banc 1994) (citation omitted).

## II. Exceptions to the General Rule

A few narrow exceptions have been recognized to this general rule. First, and inapplicable to this case, "it is permissible to elicit testimony about juror misconduct that occurred outside the jury room, such as the gathering of extrinsic evidence." *Storey,* 175 S.W.3d at 130 (citing *Travis v. Stone,* 66 S.W.3d 1, 4 (Mo. banc 2002)). When a juror obtains extrinsic evidence, the trial court may conduct a hearing to determine whether the extrinsic evidence prejudiced the verdict. *See Travis,* 66 S.W.3d at 4.

A second narrow exception has been recognized where "a juror makes statements evincing ethnic or religious bias or prejudice during deliberations. . . ." *Fleshner*, 304

S.W.3d at 88 (citing *Baumle v. Smith*, 420 S.W.2d 341, 348 (Mo. 1967)). While "jurors are encouraged to voice their common knowledge and beliefs during deliberations," this "does not include ethnic or religious bias or prejudice." *Fleshner*, 304 S.W.3d at 90. "Accordingly, if a party files a motion for a new trial alleging there were statements reflecting ethnic or religious bias or prejudice made by a juror during deliberations, the trial court should hold an evidentiary hearing . . . . " *Id.* However, juror testimony about matters "inherent in the verdict"[3] should be excluded. *Id.* at 89.

Neither exception applies to the case at bar and we refuse to create a new exception under these facts. The testimony submitted as an oral offer of proof by West consisted solely of "intrinsic" evidence relating to the thought processes of the jury concerning the evidence that was presented. Indeed, West's offer of proof was that the juror would testify that the jury noted that they were unable to compare West's voice with the audiotape of the alleged drug transactions. Further, that the juror "would testify that he would have liked to have heard [West] testify, and the jurors considered the fact that [he] did not testify and discussed it, including that if [he] had sounded different than the tapes, they would have considered that in reaching their verdicts."

Even if the juror had testified, as West alleges that he would have, this testimony would not establish that the jury used the fact that West asserted his constitutional right against self-incrimination against him. Rather, it merely establishes that the jury would have preferred to have heard West's voice so that they could compare his voice to the

---

[3] "Matters 'inherent in the verdict' include a juror not understanding the law as stated in the instructions, a juror not joining in the verdict, a juror voting a certain way due to misconception of the evidence, a juror misunderstanding the statements of a witness, and a juror being mistaken in his calculations." *Fleshner*, 304 S.W.3d at 88, n.4 (citing *Baumle*, 420 S.W.2d at 348).

voice on the tape recordings of the drug transactions. If West had wished to present evidence to the jury that the voice on the tape was not his, there were methods available to him to do so without having to waive his constitutional rights against self-incrimination. He failed to avail himself of these avenues.

As a result, the evidence West sought to present to establish the alleged jury misconduct is subject to the rule that a juror's testimony or affidavit may not be used to impeach the jury's verdict. Thus, the trial court did not abuse its discretion in overruling the motion or in refusing to allow a juror to be called to testify in support of the motion. Although West claims that his constitutional rights were violated as a result of the jury's misconduct, we do not find any misconduct by the jury or the trial court. West's point is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur

7