IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
STATE OF MISSOURI, )
 )
 Respondent, )
 )
v. ) WD83558
 )
ABRAHAM J. GILBERT, ) Opinion filed: May 25, 2021

 )
 Appellant. )

APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
 THE HONORABLE MARCO ROLDAN, JUDGE

 Division Three: Gary D. Witt, Presiding Judge,
 Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

 Abraham Gilbert appeals from the judgment of the Circuit Court of Jackson

County convicting him of two counts of statutory sodomy in the first degree and five

counts of child molestation in the first degree. In his six points on appeal, Gilbert

claims that the trial court erred in (1) overruling his Batson challenge; (2) denying

his motion for new trial based on juror misconduct; and (3) overruling his motions for

judgment of acquittal. We affirm.
 Factual and Procedural History

 Abraham Gilbert (“Gilbert”), A.G. (the “Victim”), and A.G.’s biological brother

were each adopted as children from an orphanage in Mexico by the same adoptive

parents (“Parents”). Victim’s date of birth is February 11, 1991. Gilbert’s date of

birth is August 11, 1985, making Gilbert approximately five and a half years older

than Victim.

 Gilbert began abusing Victim when she was in the fifth grade by rubbing his

hand on her vagina over her clothing. Over time, the abuse increased to where

Gilbert inserted his fingers in Victim’s vagina, put his mouth on her vagina, and

touched Victim’s breasts underneath her clothing with his hand and mouth.

 In the summer of 2002, between Victim’s fifth and sixth grade year, she and

Gilbert began mowing neighbors’ lawns to make money. Later that year while Victim

was resisting Gilbert’s sexual assault, Gilbert asked Victim, “[w]hat do you want?”

In response, Victim told Gilbert she wanted $50, believing that he would not have the

money, “so then he wouldn’t be able to do it because . . . it was during the winter and

we weren’t mowing lawns anymore and so I [didn’t] know how else he was going to

get money.” To Victim’s surprise, Gilbert had the money and paid her that same

night. Gilbert’s abuse of Victim became both more frequent and intense following

Victim’s mistaken belief that a demand of money would cease Gilbert’s misdeeds.

Gilbert made Victim rub his penis with her hand and put his penis in her mouth.

Gilbert also put his mouth on Victim’s breasts and vagina underneath her clothing

and inserted his fingers in her vagina. Gilbert’s abuse of Victim continued for the

 2
next “couple of years.” During the final act of abuse, Gilbert penetrated Victim’s

vagina with the tip of his penis and Victim was able to resist his further efforts. The

abuse ceased around the time Gilbert found a girlfriend at school that was his own

age.

 Victim did not disclose the abuse until, as an adult, she told her parents that

something had happened between her and Gilbert when she was younger, but did not

provide any detail. It was Parents’ understanding that “[Gilbert] had done something

of a sexual nature to her.” When the parents approached Gilbert about what Victim

had told them, Gilbert “confirmed that he had done something to [Victim][.]”

Eventually Victim felt her parents were not supporting her and she reported Gilbert’s

actions to the police. At some point thereafter, Gilbert wrote Victim a letter. In it,

Gilbert apologized to Victim “from the bottom of [his] heart for everything that [he]

put [Victim] through as a sibling,” and stated further that Victim “should never have

been subjected to the worst sides of [Gilbert’s] childhood and adolescence.” Gilbert’s

letter to Victim was admitted into evidence at trial.

 A jury trial began on November 18, 2018. During voir dire, the State exercised

a peremptory strike to remove Venireperson 45, an African-American female, from

the jury. In response, Gilbert’s counsel raised a Batson challenge. The State

explained that it struck Venireperson 45 because she was nodding in agreement

throughout defense counsel’s questioning. Following arguments from the parties, the

trial court overruled Gilbert’s Batson challenge and Venireperson 45 was struck.

 3
 Gilbert neither testified nor presented any evidence at trial. The jury found

Gilbert guilty of two counts of statutory sodomy in the first degree and five counts of

child molestation in the first degree.1 The court sentenced Gilbert in accordance with

the jury’s recommendation to fifteen years on each count of child molestation in the

first degree, and 17 and 34 years respectively on the two counts of statutory sodomy

in the first degree. The court ordered the sentences on the two counts of statutory

sodomy be served consecutively to each other and concurrently to the child

molestation counts, which were ordered to be served concurrently to each other, for a

total sentence of 51 years imprisonment.

 Gilbert appeals. Further factual details will be provided as relevant in the

analysis below.

 Point I

 In his first point on appeal, Gilbert contends that the trial court clearly erred

in overruling his Batson challenge to the State’s peremptory strike of an African-

American venireperson. Gilbert specifically argues that following the State striking

Venireperson 45 from Gilbert’s jury, the State’s proffered explanation that it struck

Venireperson 45 because she nodded throughout defense counsel’s voir dire was

pretextual under the totality of the circumstances.

 1 Three of the child molestation counts were charged as such in the information. However,
one count (Count I) was returned as a lesser-included offense of statutory rape in the first degree,
and another count (Count II) was returned as a lesser-included offense of statutory sodomy in the
first degree. (LF156:1-2) (LF147:8&12).

 4
 Standard of Review

 “When reviewing a ruling on a Batson challenge, we accord ‘great deference’ to

the circuit court ‘because its findings of fact largely depend on its evaluation of

credibility and demeanor.’” State v. Evans, 490 S.W.3d 377, 384 (Mo. App. W.D. 2016)

(quoting State v. Bateman, 318 S.W.3d 681, 687 (Mo. banc 2010)). Therefore, we will

reverse the circuit court’s decision only if we find it was clearly erroneous. State v.

Jackson, 385 S.W.3d 437, 439 (Mo. App. W.D. 2012). To find it was clearly erroneous,

we must have a “definite and firm conviction that a mistake has been made.” State

v. Bateman, 318 S.W.3d at 687 (quoting State v. McFadden, 216 S.W.3d 673, 675 (Mo.

banc 2007)).

 Analysis

 “The Equal Protection Clause in the United States Constitution prohibits

parties from using a peremptory challenge to strike a potential juror on the basis of

race.”2 State v. Boyd, 597 S.W.3d 263, 269 (Mo. App. W.D. 2019) (quoting State v.

Meeks, 495 S.W.3d 168, 172 (Mo. banc 2016)). “In Batson, the Supreme Court

described a three-step, burden-shifting process for challenging a peremptory strike

on this basis.” State v. Meeks, 495 S.W.3d at 172 (citing Batson v. Kentucky, 476 U.S.

79, 96-98 (1986)). “The Supreme Court, however, ‘decline[d] . . . to formulate

particular procedures to be followed upon a defendant’s timely objection to a

prosecutor’s challenges.” Id. (quoting Batson v. Kentucky, 476 U.S. at 99). To fill that

 2
 The Equal Protection Clause similarly prevents the use of peremptory strikes to exclude
potential jurors on the basis of gender. J.E.B. v. Alabama, 511 U.S. 127, 146 (1994). Gilbert makes
no claim that Venireperson 45 was struck on the basis of her gender.

 5
void, the Missouri Supreme Court articulated a three-step procedure for trial courts

to use in evaluating a Batson challenge:

 First, the defendant must raise a Batson challenge with regard to one or
 more specific venirepersons struck by the [S]tate and identify the
 cognizable racial group to which the venireperson or persons belong.
 The trial court will then require the [S]tate to come forward with
 reasonably specific and clear race-neutral explanations for the strike.
 Assuming the prosecutor is able to articulate an acceptable reason for
 the strike, the defendant will then need to show that the [S]tate’s
 proffered reasons for the strikes were merely pretextual and that the
 strikes were racially motivated.

State v. Meeks, 495 S.W.3d at 173 (quoting State v. Parker, 836 S.W.2d 930, 939 (Mo.

banc 1992)).

 “If the proponent of the strike articulates an acceptable non-discriminatory

reason for the strike, then, at the conclusion of the third step, the circuit court must

decide whether the party challenging the strike ‘has proved purposeful racial

discrimination.’” State v. Jackson, 385 S.W.3d 437, 440 (Mo. App. W.D. 2012)

(quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)). “To prove purposeful racial

discrimination, the party challenging the strike must demonstrate that the proffered

reason for the strike was merely pretextual and that the strike was, in fact, motivated

by race.” Id. (citing State v. Bateman, 318 S.W.3d 681, 689 (Mo. banc 2010)). “To

meet this standard, the party challenging the strike ‘must present evidence or specific

analysis’ showing that the proffered reason was pretextual.” Id. (quoting State v.

Johnson, 930 S.W.2d 456, 460 (Mo. App. W.D. 1996)).

 This Court considers a non-exclusive list of factors in determining whether

pretext exists, including: “the explanation in light of the circumstances; similarly

 6
situated jurors not struck; the relevance between the explanation and the case; the

demeanor of the state and excluded venire members; the court’s prior experiences

with the prosecutor’s office; and objective measures relating to motive.” State v.

McFadden, 369 S.W.3d 727, 739 (Mo. banc 2012) (quoting State v. Johnson, 284

S.W.3d 561, 571 (Mo. banc 2009)).

 Here, at the close of voir dire, the State exercised a peremptory strike to remove

Venireperson 45, who identified herself as African-American, to which defense

counsel raised a Batson challenge. In response to defense counsel’s Batson challenge,

the prosecutor explained that:

 [T]he reason . . . is that during [defense counsel’s] questioning,
 [Venireperson 45] was nodding along to just about every single question
 that [defense counsel] asked, and that’s the reason that I want to strike
 her off count. [Venireperson 45] sat and nodded in agreement with
 everything that defense counsel said.

The trial court then questioned the State as to whether there were any similarly-

situated venire members that were also nodding in agreement with defense counsel.

The prosecutor responded that “[t]here was a few that nodded in agreement with him;

they ended up being struck for cause. Based on who is left after strikes for cause and

within that number, that’s the only one that I noted was nodding in agreement with

him throughout his entire questioning.” Defense counsel responded that because

“no record was made about it,” he was unaware which potential jurors were nodding

in agreement with him, but acknowledged that Venireperson 45 “may have been one

of them.” Defense counsel added that he didn’t know whether he “said anything that

would indicate a prejudice in nodding along with it,” and insisted further that if he

 7
was explaining a right, such as the right to remain silent, and the juror nodded their

head, then he “fail[s] to see the logical connection with agreeing with the explanation

of a right and a cause for strike or a peremptory cause for strike.”

 In response, the prosecutor stated:

 The observations of how a juror is receptive to one side over the other,
 having no facts or anything like that, those observations are basis for
 whether or not, given the other available jurors, if that’s somebody that’s
 different that we would strike for that reason, based on the observations.
 And so it has nothing to do with her race. It has everything to do with
 her sitting there and nodding along in agreement with everything
 [defense counsel] said.

 We’re the State. This is an adversarial process. I don’t want a juror on
 there who’s sitting there nodding along, acting like, I’m in total
 agreement, I’m on your side, with every single thing that you’re saying
 throughout the entire process.
 ...
 There’s no other similarly-situated jurors and I’m striking only those
 types of people.

Defense counsel responded stating that he doesn’t “know how to identify similarly-

situated people who the prosecuting attorney also noticed” when “talking about

private observations of opposing counsel.” The trial court thereafter overruled

Gilbert’s Batson challenge.

 Here, Gilbert met step one of the three-step procedure by asserting a Batson

challenge on the State’s strike of Venireperson 45, an African-American. The State

then met step two of the procedure by offering the race-neutral justification that the

strike was due to Venireperson 45 nodding in agreement with defense counsel

throughout voir dire. After Gilbert challenged this reason as pretextual, the

 8
prosecutor provided a more extensive race-neutral explanation for the peremptory

strike of Venireperson 45. Step three of the Batson process was complete when, based

on this explanation from the State, the court deemed the strike race-neutral and

Gilbert failed to prove pretext.

 We find nothing clearly erroneous with the court’s ruling. The prosecutor

explained that similarly-situated venire members – those that also nodded in

agreement with defense counsel throughout voir dire – had already been struck for

cause, leaving only Venireperson 45. Importantly, a venireperson’s “body language

during questioning” is a “legitimate basis for using a peremptory strike.” State v.

Dow, 375 S.W.3d 845, 850 (Mo. App. W.D. 2012) (quoting State v. Morrow, 968 S.W.2d

100, 114 (Mo. banc 1998)). “One of the differences between a peremptory strike and

a challenge for cause is that, in choosing to exercise a peremptory strike, an attorney

or party ‘is allowed a subjective evaluation of the honesty and accuracy of the

statement of the venireperson.’” Id. (quoting State v. Rollins, 321 S.W.3d 353, 368

(Mo. App. W.D. 2010). “[T]he exercise of peremptory challenges is the product of the

subjective analyses of a wide variety of character and personality traits perceived by

counsel. Batson does not prohibit ‘hunch’ challenges so long as racial animus is not

the motive.” State v. Antwine, 743 S.W.2d 51, 67 (Mo. 1987). “Hence, [b]ecause

weighing the legitimacy of the State’s explanation for a peremptory strike is, by

nature, a subjective exercise, we place great reliance in the trial court’s judgment.”

State v. Dow, 375 S.W.3d at 850 (quoting State v. Brown, 246 S.W.3d 519, 525 (Mo.

App. S.D. 2008)) (internal quotations omitted).

 9
 In sum, Gilbert failed to meet his burden in proving purposeful discrimination

by the State. The trial court did not clearly err in overruling Gilbert’s Batson

challenge. Point I is denied.

 Point II

 In his second point, Gilbert contends that the trial court erred in denying his

motion for new trial based on juror misconduct. Despite acknowledging Missouri’s

general rule governing the impeachment of a jury verdict, Gilbert urges this Court to

create a new exception applicable to a jury’s improper consideration of a defendant’s

failure to testify in reaching a verdict.

 Standard of Review

 This Court will not disturb a trial court’s ruling on a motion for a new trial

based on juror misconduct unless the trial court abused its discretion. State v. West,

425 S.W.3d 151, 154 (Mo. App. W.D. 2014). “A trial court abuses its discretion if its

ruling ‘is clearly against the logic of the circumstances then before the court and is so

arbitrary and unreasonable as to shock the sense of justice and indicate a lack of

careful consideration.’” Id. (citing Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d

81, 86-87 (Mo. banc 2010)).

 Analysis

 The “well-founded and long-established rule” governing impeachment of a

verdict, referred to in Missouri as the Mansfield Rule, is that a “juror’s testimony

about jury misconduct allegedly affecting deliberations may not be used to impeach

 10
the jury’s verdict.” State v. West, 425 S.W.3d at 154 (citing State v. Herndon, 224

S.W.3d 97, 103 (Mo. App. W.D. 2007)).

 The rule is perfectly settled, that jurors speak through their verdict, and
 they cannot be allowed to violate the secrets of the jury room, and tell of
 any partiality or misconduct that transpired there, nor speak of the
 motives which induced or operated to produce the verdict. Missouri law
 has long held that a juror may not impeach a unanimous, unambiguous
 verdict after it is rendered. . . . Further, a motion court is not required
 to hear testimony from jurors to rule on a motion for new trial that is
 brought on allegations of juror misconduct.

State v. West, 425 S.W.3d at 154-55 (internal citations and quotations omitted). In

other words, “juror testimony is improper if it merely alleges that jurors acted on

improper motives, reasoning, beliefs, or mental operations, also known as ‘matters

inherent in the verdict.’” State v. Bolden, 371 S.W.3d 802, 805 n.2 (Mo. banc 2012)

(quoting Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d at 87).

 There are two major policy considerations for this rule. First, there
 would be no end to litigation if verdicts could be set aside because one
 juror reportedly did not correctly understand the law or accurately
 weigh the evidence. Second, there is no legitimate way to corroborate or
 refute the mental process of a particular juror.

Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d at 87-88 (internal citation omitted).

 Two narrow exceptions have been recognized to this general rule. State v.

West, 425 S.W.3d at 155. First, “it is permissible to elicit testimony about juror

misconduct that occurred outside the jury room, such as the gathering of extrinsic

evidence.” State v. West, 425 S.W.3d at 155 (quoting Storey v. State, 175 S.W.3d at

130)). Second, it is likewise permissible to elicit testimony about jury misconduct

that occurred during deliberations where “a juror makes statements evincing ethnic

 11
or religious bias or prejudice during deliberations . . . .” State v. West, 425 S.W.3d at

155 (quoting Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d at 88).

 Gilbert made an oral offer of proof regarding the alleged juror misconduct. The

evidence Gilbert sought to present would have consisted solely of “intrinsic” evidence

relating to the thought processes of the jury, and, as a result, is subject to the rule

that a juror’s testimony may not be used to impeach the jury’s verdict. State v. West,

425 S.W.3d at 155. While he acknowledges that neither exception applies to the facts

of this case, Gilbert urges this Court to create a new exception encompassing a jury’s

improper consideration of a defendant’s failure to testify in reaching its verdict. We

decline to do so. In so doing, we are mindful of the wise words spoken by the United

States Supreme Court when approving the exception for statements made during

deliberations indicating racial bias. Pena-Rodriguez v. Colorado, 137 S. Ct. 855, 867-

68 (2017). There, the Court warned that creating further exceptions to the general

rule could create havoc: “[t]o attempt to rid the jury of every irregularity of this sort

would be to expose it to unrelenting scrutiny. It is not at all clear . . . that the jury

system would survive such efforts to perfect it.” Id. at 868 (internal citations and

quotations omitted). We heed the Court’s warning.

 Further, it is evident that Gilbert’s jury gave due consideration to the evidence

presented, and not simply the absence of Gilbert’s testimony. Indeed, the jury’s

careful consideration of the evidence presented at trial was demonstrated by its

verdict, which returned guilty verdicts of child molestation – both lesser-included

 12
offenses to the charges of statutory rape in the first degree and statutory sodomy in

the first degree.

 The trial court did not abuse its discretion in overruling the motion for new

trial. Point II is denied.

 Points III, IV, V, and VI

 In his third, fourth, fifth, and sixth points, Gilbert argues that the trial court

erred in overruling his motions for judgment of acquittal, or, in the alternative, a new

trial, for the charge of first degree statutory sodomy and three charges of first degree

child molestation, respectively. We address these points together as they are based

on the common premise that the State failed to prove that the charged acts occurred

during the time period stated in the information.

 Standard of Review

 “To determine whether the evidence presented was sufficient to support a

conviction and to withstand a motion for judgment of acquittal, [a reviewing c]ourt

does not weigh the evidence but, rather, ‘accept[s] as true all evidence tending to

prove guilt together with all reasonable inferences that support the verdict, and

ignore[s] all contrary evidence and inferences.’” State v. Vickers, 560 S.W.3d 3, 21

(Mo. App. W.D. 2018) (quoting State v. Zetina-Torres, 482 S.W.3d 801, 806 (Mo. banc

2016)). “Our ‘review is limited to determining whether there was sufficient evidence

from which a reasonable juror might have found the defendant guilty beyond a

reasonable doubt.’” Id. (quoting State v. Letica, 356 S.W.3d 157, 166 (Mo. banc 2011).

“This is not an assessment of whether [we] believe[] that the evidence at trial

 13
established guilt beyond a reasonable doubt but rather a question of whether, in light

of the evidence most favorable to the State, any rational fact-finder could have found

the essential elements of the crime beyond a reasonable doubt.” Id. (quoting State v.

Nash, 339 S.W.3d 500, 509 (Mo. banc 2011).

 Analysis

 A charging document satisfies the guarantees of the Fifth and Sixth
 Amendments if it, first, contains the elements of the offense charged and
 fairly informs a defendant of the charge against which he must defend,
 and, second, enables him to plead an acquittal or conviction in bar of
 future prosecutions for the same offense. Every information or
 indictment puts the defendant on notice, for due process purposes, of all
 offenses included in the offense charged. A criminal defendant, as a
 matter of due process, is entitled to notice of the charges against him
 and may not be convicted of any offense of which the information or
 indictment does not give him fair notice.

State v. Miller, 372 S.W.3d 455, 466 (Mo. banc 2012) (internal citations and

quotations omitted).

 Rule 23.01(b)(3)3 requires that the indictment or information “[s]tate the date

and place of the offense charged as definitely as can be done. If multiple counts

charge the same offense on the same date or during the same time period, additional

facts or details to distinguish the counts shall be stated[.]” However, “[t]ime is not

essential in child sexual abuse cases because it can be impossible to ascertain specific

dates of the sexual abuse.” State v. Miller, 372 S.W.3d at 464 (citations omitted).

“[T]he State is not confined in its evidence to the precise date stated in the

 3 All Rule references are to Missouri Supreme Court Rules (2018), unless otherwise

indicated.

 14
information, but may prove the offense to have been committed on any day before the

date of the information and within the period of limitation.”4 Id. (quoting State v.

Bunch, 289 S.W.3d 701, 703 (Mo. App. S.D. 2009)). Indeed, “[a]ppellate courts in

previous cases have held that periods of time ranging anywhere from a 24-day period

to a span of four years and six months were sufficient for notice and due process

purposes.” State v. Miller, 372 S.W.3d at 466 (citations omitted).

 Here, Gilbert was charged with statutory sodomy in the first degree for

penetrating the Victim’s vagina with his finger (Point III); with child molestation in

the first degree for placing his hand on Victim’s breasts (Point IV); with child

molestation in the first degree for placing his mouth on Victim’s breasts (Point V);

and with child molestation in the first degree for placing his hand on Victim’s vagina

(Point VI). Each count in the information alleged that the charged conduct occurred

between August 28, 2002, and February 10, 2004. The verdict directing instruction

mirrored those allegations, including the date range for the offenses.

 At trial, Victim testified to specific markers in time from which the jury could

reasonably find that the charged conduct occurred within the time period alleged by

the State: Victim testified that her date of birth was February 11, 1991; that she

started kindergarten when she was five-years-old, which would have been in the fall

of 1996; and that she was in the fifth grade when the terrorist attacks of September

11, 2001, (“9/11”) occurred. Thus, she would have started the sixth grade in the fall

 4 Missouri case law has, however, recognized that exceptions may exist if there are issues

with alibi, access to the victim, or the statute of limitations. State v. Bunch, 289 S.W.3d 701, 703 n.5
(Mo. App. S.D. 2009) (citing State v. Carney, 195 S.W.3d 567, 571 n.7 (Mo. App. S.D. 2006)). Gilbert
raised no such defense in this case.

 15
of 2002. Victim further testified that she learned to mow lawns when she was eleven-

years-old, which would have been the summer of 2002. The following winter, Victim

told Gilbert that she would stop resisting his sexual advances if he paid her $50 under

the mistaken belief that he would have no money. Victim testified that after such

payment was made in late 2002, Gilbert put his fingers in Victim’s vagina (Point III);

Gilbert placed his mouth on Victim’s breasts (Point V); and Gilbert touched the skin

of Victim’s vagina (Point VI). There was, therefore, a logical timeline sufficient for a

reasonable juror to conclude that such acts occurred during the charged period of

August 28, 2002, to February 10, 2004.

 As to Point IV, we preliminarily address Gilbert’s argument that he was under

the age of 17 until August 11, 2002, and thus, this matter should have preceded

through the juvenile court. This argument was never presented to the trial court,

was not contained in a point relied on, and is argued for the first time in his reply

brief. “We will not entertain points and arguments first raised on appeal in a reply

brief.” State v. Brown, 406 S.W.3d 460, 465 n.9 (Mo. App. W.D. 2013) (citing Coyne

v. Coyne, 17 S.W.3d 904, 906 (Mo. App. E.D. 2000)). Similarly, “[w]e do not consider

arguments raised in the argument portion of the brief that were not encompassed in

the points relied on.” State v. Irby, 254 S.W.3d 181, 195 (Mo. App. E.D. 2008) (citing

State v. Daggett, 170 S.W.3d 35, 42 (Mo. App. S.D. 2005)). We do not address this

argument.

 We proceed in addressing whether there was sufficient evidence to find that

Gilbert touched the Victim’s breasts within the charged period. Victim clearly

 16
testified that Gilbert touched her breasts with his hand underneath her clothing on

multiple occasions throughout the period of sexual abuse. She also testified that the

sexual abuse by Gilbert began during her fifth grade year, which commenced in

August 2001 and lasted until Gilbert began dating a girl in his class at school, which

was established as occurring in the Fall of 2003. Gilbert argues that Victim’s

testimony therefore established that such conduct could have occurred before August

28, 2002, the commencement of the time period stated in the information as to when

the abuse began. He states Victim’s testimony places the act as occurring as much

as one year prior to the time as that alleged in the information. While correct, even

if the act did occur as much as a year prior to the period alleged in the information,

Gilbert was still provided sufficient notice and due process by the information. See

State v. Miller, 372 S.W.3d at 466 (periods of up to four and one-half years prior to

the period alleged in the information have been held sufficient for notice and due

process purposes) (citations omitted).

 Accepting as true all evidence tending to prove Gilbert’s guilt together with all

reasonable inferences that support the verdict, and ignoring all contrary evidence and

inferences, we find sufficient evidence from which a reasonable juror could find the

defendant guilty beyond a reasonable doubt. State v. Vickers, 560 S.W.3d at 21.

Points III, IV, V, and VI are denied.

 17
 Conclusion

 The trial court’s judgment is affirmed.

 __________________________________________
 W. DOUGLAS THOMSON, JUDGE
All concur.

 18