

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

TYMON REED,                              )
                                         )
                    Appellant,           )
                                         )    **WD84307**
v.                                       )
                                         )    **OPINION FILED:**
                                         )    **April 26, 2022**
STATE OF MISSOURI,                       )
                                         )
                    Respondent.          )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jennifer M. Phillips, Judge**

**Before Division Two:**  Karen King Mitchell, Presiding Judge, and
Edward R. Ardini, Jr., and Thomas N. Chapman, Judges

Tymon Reed appeals, following an evidentiary hearing, the denial of his Rule 29.15[1] motion for post-conviction relief.  Reed raises two points on appeal:  (1) he claims trial counsel was ineffective for failing to subpoena and call two jurors from his trial as mitigation witnesses at his sentencing hearing and (2) he claims trial counsel was ineffective for failing to argue imperfect self-defense to the jurors during guilt-phase closing argument to support a verdict for involuntary manslaughter.  Finding no error, we affirm.

---

[1] All rule references are to the Missouri Supreme Court Rules (2020), unless otherwise noted.

## Background[2]

On the afternoon of September 19, 2016, Victim Javon Reilly was walking home with some friends from Van Horn High School in Independence, Missouri, when Reed and another man named Brandon Long approached, looking for Victim's friend, Owen Ogo. According to Reed, a friend of Ogo's had robbed Reed during a marijuana sale, and Reed wished to discuss the matter with Ogo. Victim and one of his friends attempted to reach Ogo, but both were unsuccessful. Victim and Reed then began arguing. Reed suggested they all start walking down Home Street, and Victim handed his backpack to his friend Ni'Kia Porter because it seemed that Victim and Reed were going to get into a physical fight. Porter took out her cell phone and began recording in hopes of witnessing a fight that could be posted online.

At one point, Victim stopped walking down the street with Reed, and when Reed insisted they continue farther down the road, Victim refused. Reed then said, "You ain't walkin' no further?" and Victim responded, "Nah." Reed said, "For real?" and Victim responded, "Yeah." Reed verified, "You ain't movin'?" and Victim reiterated, "Nah, I ain't movin'." Reed said, "Alright, say no more." Reed then approached Victim with a gun drawn and chambered a round. Reed pointed the gun at Victim's feet and told Victim to "Move it, B." Victim jumped back, and Reed then pointed the gun at Victim's stomach. Victim initially put his hands up, but he then tried to grab the gun and lost his footing in the process. Reed maintained control of the gun, and Victim jumped up and began to run away. As Victim ran, Reed fired nine shots at Victim, striking Victim in the back and side with six of the shots, one of which was fatal.

After learning Reed's identity, police were able to track his phone, and they arrested him at a gas station the following day. Upon Reed's arrest, officers conducted an inventory search of

---

[2] Most of the underlying facts of Reed's convictions are taken from this court's memorandum issued in Reed's direct appeal, *State v. Reed*, 586 S.W.3d 303 (Mo. App. W.D. 2019), without further attribution.

his car. In the trunk, they located a high-point firearm with an empty magazine and clothing matching what Reed was wearing in the video on Porter's cell phone.

A grand jury indicted Reed for one count of first-degree murder and one count of armed criminal action. At trial, following Reed's request, the jury was instructed on the lesser-included offenses of second-degree murder and voluntary manslaughter. And, pursuant to the State's request, the jury was instructed on involuntary manslaughter. The jury ultimately found Reed guilty of second-degree murder and armed criminal action for which the jury recommended imprisonment for terms of seventeen and three years, respectively. At the sentencing hearing, Reed's counsel sought to introduce an email from juror M.M., but the State argued that the email amounted to an impermissible attempt to impeach the verdict, and the trial court agreed and refused to accept it. The trial court then followed the jury's recommendation and sentenced Reed to concurrent terms of seventeen and three years' imprisonment.

This court affirmed Reed's convictions and sentences in a memorandum decision on direct appeal. *State v. Reed*, 586 S.W.3d 303 (Mo. App. W.D. 2019). Thereafter, Reed timely filed a *pro se* Rule 29.15 motion for post-conviction relief. Appointed counsel filed an amended motion, raising two claims of ineffective assistance of trial counsel; Reed claimed that trial counsel was ineffective in (1) failing to subpoena and call jurors M.M. and S.W. to testify in mitigation at his sentencing hearing and (2) failing to argue imperfect self-defense to the jury during the guilt phase. The motion court held an evidentiary hearing wherein it received testimony from trial counsel, Reed, and juror S.W.; the motion court later received deposition testimony from juror M.M. Following the hearing, the motion court denied Reed's Rule 29.15 motion, finding that counsel was not ineffective insofar as the testimony of the jurors was impermissible and counsel's choice of defense was a matter of reasonable trial strategy. Reed appeals.

3

**Standard of Review**

"Our review of the motion court's denial of a Rule 29.15 post-conviction motion is 'limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous.'" *Shaw v. State*, 636 S.W.3d 596, 599 (Mo. App. W.D. 2021) (quoting Rule 29.15(k)). "A judgment is clearly erroneous when, in light of the entire record, [we are] left with the definite and firm impression that a mistake has been made." *Id.* (quoting *Webber v. State*, 628 S.W.3d 766, 770 (Mo. App. W.D. 2021)).

**Analysis**

Reed raises two claims of ineffective assistance; first, he argues that counsel was ineffective in failing to subpoena and call as witnesses jurors M.M. and S.W. to testify in mitigation at his sentencing hearing and, second, that counsel was ineffective for failing to argue imperfect self-defense at the guilt phase of his trial.

To demonstrate ineffective assistance of counsel, a movant must prove, by a preponderance of the evidence, that "(1) his . . . counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation; and (2) he . . . was prejudiced by that failure." *Id.* at 600 (quoting *Webber*, 628 S.W.3d at 770 (internal quotations omitted)). The performance prong "requires the movant to overcome the strong presumption that his trial counsel's actions were reasonable and effective." *Id.* (quoting *Webber*, 628 S.W.3d at 770). The prejudice prong "requires the movant to establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Webber*, 628 S.W.3d at 770) (internal quotations omitted). If a movant fails to prove either prong, "we need not address the other." *Id.*

**I. Trial counsel was not ineffective in failing to introduce inadmissible evidence.**

In his first point, Reed argues that trial counsel was ineffective in failing to subpoena and call as witnesses jurors M.M. and S.W. to testify at his sentencing hearing. The motion court rejected this claim on the ground that jurors may not impeach the verdict. Reed claims that, because the jurors' testimony would not have impeached the verdict, the motion court's judgment should be reversed. We disagree.

"Missouri law has long held that a juror may not impeach a unanimous, unambiguous verdict after it is rendered." *Fonville v. State*, 563 S.W.3d 794, 800 (Mo. App. W.D. 2018) (quoting *State v. West*, 425 S.W.3d 151, 155 (Mo. App. W.D. 2014)) (internal quotations omitted). "Use of information obtained from jurors after a trial is limited and juror testimony is excluded from consideration on post-judgment matters."[3] *State v. Harris*, 477 S.W.3d 131, 147 (Mo. App. E.D. 2015). No juror will be heard to impeach his or her own verdict or the verdict of a jury of which he or she was a member. *State v. Harding*, 734 S.W.2d 871, 875 (Mo. App. E.D. 1987).

Here, M.M. and S.W. both served on Reed's jury. And both jurors acknowledged that the jury's sentencing recommendation of seventeen years for murder and three years for armed criminal action was unanimous. Yet both jurors indicated that, if called to testify at sentencing, they would have advocated for a lesser sentence; M.M. indicated she thought ten years was appropriate, and S.W. indicated that there were "some problems at the sentencing," and she thought they had agreed to fifteen years. This proposed testimony is plainly directed at impeaching the unanimous and unambiguous sentencing verdict.

---

[3] There are two exceptions to this rule, neither of which applies here. "[I]t is permissible to elicit testimony about juror misconduct that occurred outside the jury room, such as the gathering of extrinsic evidence," and testimony establishing that "a juror ma[d]e[] statements evincing ethnic or religious bias or prejudice during deliberations." *State v. Harris*, 477 S.W.3d 131, 147 (Mo. App. E.D. 2015). Reed does not invoke either exception.

Reed argues that "the testimony of M.M. and S.W. was not being presented to call into question the jury's sentencing verdict, but instead to support the trial court exercising its statutory authority to reduce the jury's recommended sentence." But a juror's testimony constitutes impeachment if it "declar[es] 'an intent different from that expressed in the verdict returned in open court.'" *Songer v. Brittain*, 272 S.W.2d 16, 22 (Mo. App. 1954) (quoting *State ex rel. Rogers v. Gage Bros. & Co.*, 52 Mo. App. 464, 470 (1893)). "[A]ny testimony regarding the thought process or feelings of any juror violates the rule and is inadmissible to prove juror misconduct." *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 643 (Mo. banc 2013). "The law is now well settled that the [testimony] of jurors may be received in support of and to uphold the verdict, though not to contradict or destroy it." *State v. Westmoreland*, 126 S.W.2d 202, 204 (Mo. 1939) (quoting *Jordan v. St. Joseph Ry., Light, Heat & Power Co.*, 73 S.W.2d 205, 210 (Mo. 1934)).

The jurors' proposed testimony would have served only to contradict or undermine the jury's recommended sentences by advocating that the court enter something less than the seventeen and three years unanimously agreed upon. Therefore, it was inadmissible. And, as "[c]ounsel is not ineffective for failing to present evidence that is inadmissible," *McLaughlin v. State*, 378 S.W.3d 328, 346 (Mo. banc 2012), the motion court did not clearly err in denying this claim.

Point I is denied.

## II. Reed failed to satisfy his burden of demonstrating that trial counsel was ineffective for failing to assert imperfect self-defense.

In his second point, Reed argues that trial counsel provided ineffective assistance by failing to argue imperfect self-defense in support of trial counsel's strategy to seek conviction of a

6

lesser-included offense, specifically the lesser-included offense of involuntary manslaughter.[4] We disagree.

At the evidentiary hearing, trial counsel testified that the defense strategy was to seek conviction of a lesser-included offense. As part of that strategy, trial counsel submitted jury instructions on the lesser-included offenses of second-degree murder and voluntary manslaughter. The State also submitted an instruction for involuntary manslaughter. And, though Reed was convicted of second-degree murder rather than involuntary manslaughter, the fact that he was convicted of a lesser-included offense at all suggests that trial counsel's strategy was effective. Nonetheless, Reed argues that trial counsel should have gone further in her advocacy for the lesser-included offense of involuntary manslaughter by arguing imperfect self-defense.

Trial counsel specifically rejected a traditional self-defense strategy because the evidence did not support it. More specifically, the evidence included "an unarmed victim, . . . injuries, gunshot wounds to [the victim's] back, . . . witnesses [who] indicated that [the victim] had run from Mr. Reed prior to being shot and killed, and . . . a video that was hard to get around." Despite trial counsel's plainly reasonable strategic decision not to argue traditional self-defense, Reed suggests that she should nevertheless have argued imperfect self-defense. But Reed provides no authority (and we have found none) indicating that Missouri law permits imperfect self-defense to be raised as a freestanding defense in the absence of a claim of traditional self-defense.[5] In other

---

[4] Imperfect self-defense is "the intentional act of defending one's self, [but] in doing so one uses unreasonable force." *State v. Beeler*, 12 S.W.3d 294, 299 (Mo. banc 2000). Asserting imperfect self-defense allows for a lesser-included offense instruction of involuntary manslaughter in a homicide trial. *Id*. at 300.

[5] The motion court found, "As self-defense was not argued or given in this case and the trial strategy was for a less[er-]included offense, there was no basis for trial counsel to argue the notion of 'imperfect self-defense' to the jury." Reed argues that the motion court's conclusion that imperfect self-defense was unavailable because self-defense was not asserted is clearly erroneous and, therefore, should be reversed. We need not decide whether the motion court's assertion was accurate because it was Reed's burden to establish entitlement to relief by a preponderance of the evidence. Because Reed did not present any authority supporting his suggestion that trial counsel could have raised imperfect self-defense without also raising traditional self-defense, he simply failed to meet his burden.

states, imperfect self-defense is either a codified defense, *see, e.g.,* 18 Pa. Stat. and Cons. Stat. Ann. § 2503 (West 2022), or dependent upon an assertion of traditional self-defense. *See, e.g., People v. Reese*, 815 N.W.2d 85, 98 (Mich. 2012) ("Under Michigan law, the doctrine of imperfect self-defense does not exist as a freestanding defense that mitigates a murder to manslaughter . . . .").

In each of the cases Reed relies on, traditional self-defense was asserted at trial. *See State v. Thomas*, ED82826, 2004 WL 2793255, *1 (Mo. App. E.D. Dec. 7, 2004);[6] *State v. Beeler*, 12 S.W.3d 294, 297 (Mo. banc 2000).[7] Thus, the cases did not address the question raised here—whether a defendant may, in the absence of a claim of traditional self-defense, still rely on a claim of imperfect self-defense. Though trial counsel testified that she was "unfamiliar with the imperfect self-defense argument," her lack of knowledge is irrelevant unless imperfect self-defense was actually an available defense to be advanced. And because it was Reed's burden to establish that trial counsel's performance was deficient, it was incumbent upon him to establish that imperfect self-defense was an available defense for trial counsel to have asserted, despite her strategic decision *not* to pursue traditional self-defense. In the absence of authority supporting the availability of imperfect self-defense in this case, there is no basis for declaring trial counsel ineffective because counsel is not ineffective for failing to advance an unavailable defense

---

[6] We recognize that, because *Thomas* was transferred to the Missouri Supreme Court, the Eastern District's decision is no longer authoritative. We cite the Eastern District decision, however, because it contains the additional factual information reflecting that Thomas advanced a traditional self-defense theory at trial, while the Missouri Supreme Court decision in *State v. Thomas*, 161 S.W.3d 377 (Mo. banc 2005), did not address that fact, as it was not relevant to the issue on appeal to the Court—whether Thomas was entitled to certain instructions at trial.

[7] Many cases since *Beeler* identify it holding that "it is proper to give an involuntary manslaughter instruction . . . , where second-degree murder is charged *and self-defense is at issue*." *State v. Battle*, 32 S.W.3d 193, 198 (Mo. App. E.D. 2000) (emphasis added); *see also State v. Davis*, 26 S.W.3d 329, 332 (Mo. App. E.D. 2000); *State v. Newberry*, 157 S.W.3d 387, 396 (Mo. App. S.D. 2005).

strategy.[8]  *See State v. Chambers*, 891 S.W.2d 93, 113 (Mo. banc 1994) (holding that "counsel is not ineffective for failing to produce unavailable documents").

Here, trial counsel reasonably chose to pursue a strategy of seeking a lesser-included offense and avoid advancing any claim of self-defense.  Because Reed has not shown that the defense he now advocates was an available alternative,[9] he has failed to establish that trial counsel's performance was deficient.

Point II is denied.

### Conclusion

The motion court did not clearly err in overruling Reed's Rule 29.15 motion.  Its judgment is affirmed.

_____
Karen King Mitchell, Presiding Judge

Edward R. Ardini, Jr., and Thomas N. Chapman, Judges, concur.

---

[8] We also question whether imperfect self-defense would have been available, even if trial counsel had advanced a traditional claim of self-defense, insofar as Reed was the initial aggressor in the conflict below.  *Reed*, 586 S.W.3d 303, memo. op. at 6 ("the evidence—even viewed in the light most favorable to Reed—shows . . . that Reed was the initial aggressor").  It does not appear that Missouri courts have addressed this issue, though they have indicated that evidence supporting a claim of imperfect self-defense typically consists of showing that "either the need to defend or the manner in which [a person] defended [him]self was unreasonable." *Simmons v. State*, 502 S.W.3d 739, 744 (Mo. App. W.D. 2016) (quoting *State v. Frost*, 49 S.W.3d 212, 218 (Mo. App. W.D. 2001)).  Other states appear to be split in their approach as to whether initial aggressor status precludes a claim of imperfect self-defense. *See* 40 C.J.S. Homicide § 114 (collecting cases).

[9] And, even if imperfect self-defense were an available alternative, "[i]neffective assistance of counsel cannot be established where counsel pursued one reasonable trial strategy to the exclusion of another." *State v. Ferguson*, 20 S.W.3d 485, 508 (Mo. banc 2000).